EDMUND O. BARNES

    vs                           No. 7837

REV. FRANCOIS ROUGE

October 18, 1920.

EDMUND O. BARNES

vs.

REV. FRANCOIS ROUGE.

Appeal from Civil District Court, Hon. Geo. H. Theard, Judge.

CHARLES F. CLAIBORNE, JUDGE.

On December 8th, 1915, plaintiff, through Lyle Saxon, Attorney, filed suit against the defendant for $7,000 and obtained judgment against him on February 1916. He issued execution, and seized certain notes owned by the defendant. On March 3d, 1916, they were advertised for sale, and on March 14th, 1916, they were adjudicated to the plaintiff E. O. Barnes. In his return, the Sheriff states that Barnes, as plaintiff, retained the amount in his hands on account of his claim and judgment, "charges as detailed on the reverse hereof still due by plaintiff herein". These charges amounted to $159.90.

In November 1916, a second execution issued, more property was seized and sold on February 7th, 1917. The costs of this second execution amounted to $38.07. They seem to remain unpaid also.

On November 24th, 1919, more than three years and six months after the costs of the first sale became due and exigible, but less than that time after the costs of the second execution became exigible, the Sheriff, Louis Knop, took a rule against the plaintiff and against A. H. Johness for judgment against them for the above sum of $197.97.

They pleaded the Prescription of three years.

For answer they averred:

1o that they employed Lyle Saxon, an attorney at law to represent them in their suit against the defendant Rouge; that Saxon had an open account with the Sheriff, and that the Sheriff had elected to hold said Saxon as the person liable for these costs, and that the costs were charged to the open account of Saxon; that the Sheriff made repeated demands on

48

Saxon to pay the same, and that it was not until nine months after Saxon had moved away from this City and twenty-two months after the bills were incurred that the Sheriff made a demand on Johness for payment of the same;

2o   that the agreement between Johness and Saxon was that Johness was to pay Saxon $700 for his services and all costs of court, and that Saxon made an assignment of his claim of $700 to A. S. White which defendant Johness paid to White before any demand was made upon him by the Sheriff;

3o   that they have paid Saxon all they owed him; that on March 22d, 1916, they paid him $212.68; that he owes defendant Johness $100 for money loaned.

There was judgment dismissing the rule, for reasons orally assigned.  Upon the argument of the case, it did not appear what three were the reasons were. The Sheriff appealed.

### Prescription.

Article 3538 (3503) of the Civil Code reads as follows:
"The following actions are prescribed by three years:
x x x   That of x x Sheriff x x for their fees and emoluments".

Act 136 of 1880 p 187 (195) provides for Sheriff's fees. Section 24 p 196, says:

"That the fees of the Sheriff shall be advanced or paid by the party requiring the service to be performed, and such party shall be entitled to recover the same from the other party on the final termination of the cause, if costs should be decreed in his favor &c ".
Sec. 26:
"That all fees proper of the Sheriff shall be due and collectible every six months from the institution of the suit".

As regards Barnes the plea of prescription seems to be well made as far as the bill of $159.90 is concerned. It was incurred at the latest on March 14th, 1916; it became collectible "six months from the institution of the suit". Suit was filed December 8th, 1915, therefore the bill became collectible on June 8th, 1916; the rule for costs was filed November 24th, 1919, more than three years after June 8th, 1916; the costs

49

were therefore prescribed as against Barnes. But the second bill of $38.07 was incurred only on February 7th, 1917, and is therefore not prescribed even as against Barnes.

But the prescription of three years applicable to Barnes, the plaintiff in the case and the party primarily liable under the law, does not shield Johness.

Johness assumed the payment of those costs, and as to him the prescription of ten years, and not three years applies. In a letter dated February 9th, 1918, Johness writes to W. O. Hart, attorney for the Sheriff:

> "Acknowledging your letter of the 8th, I am willing to admit the liability for Mr. E. O. Barnes, if there be any on my part".

This was an assumption of any liability of Barnes to the Sheriff. The fact of this assumption is corroborated by the circumstances that Johness had an interest in the Barnes suit, and that he conducted all the correspondence between himself and W .O. Hart, attorney for the Sheriff, and Sol Weiss, attorney for Saxon, concerning the collection of this bill of costs.

In Ludeling vs Felton, 29 A,, 719, it was decided that as against the widow who had accepted the community, and thus assumed payment of its debts, the prescription of claims against her deceased husband was ten years.  See also 7 A., 553.

In Scionneaux vs Waguespack, 32 A, , 288, it was held that the prescription of promissory notes was ten years, as a personal obligation, as against a person who had assumed their payment.

The same ruling was made in Levy vs. Desposito, 133 La., 126.

In the case of Nienaber vs Raine, 9 Ct. App,, 64, the Court said:

> "Where a purchaser, not a party to a mortgage note, assumes its payment as part of the purchase price, such assumption is a stipulation pour autrui, which creates a personal obligation to pay the price of sale, and which is subject to the prescription of ten years".

50

Merits.

1o   The novel proposition is advanced by the defendants that by giving credit to Lyle Saxon, the attorney for Barnes, the Sheriff discharged Barnes from liability to him and could look only to Saxon for payment of his fees.   There is no authority and no precedent for such contention.   The testimony of the Sheriff is that there is no case on record in which an attorney was considered or held liable for costs incurred by him as attorney.   He states the relations of the attorney towards the Sheriff, and such is our experience after long years of practice, as follows:

Q.   You looked to Mr. Saxon  to get the money?

A.   No; we looked to the plaintiff for the money.   It is just that we take the standing of the lawyers as to whether we should  give credit to him for his client, to see that he would see that we get paid. We don't look to the lawyer .  We never made a lawyer pay a bill yet".

The plaintiff in this case was liable to the Sheriff for the costs incurred by him; in order to hold Saxon liable it was necessary for him to have a written assumption from Saxon, which he does not pretend he ever had.

11o   It is next contended that the agreement between Johness and Saxon was that Johness was to pay Saxon $700 for his services and all costs of court, and that Saxon made an assignment of his claim of $700 to A. S. White which Johness paid to White before any demand was made upon him by the Sheriff.

The only evidence of this agreement is the testimony of Johness himself. He says:

"It is my recollection that Mr. Saxon was to be paid $700.00, and assume all costs in that litigation".
This testimony is weak and lacks certainty and conviction.

Besides, it is amendable to two legal objections:

1o  being a "contract for the payment of money x x above $500" it "must be proved at least by one credible witness, and other corroborating circumstances",  C.C. 2277 (2257) and

2o  being a "promise to pay the debt of a third person"

51

parole evidence cannot be received to prove it. Were the Sheriff to attempt to hold Saxon on the evidence of the agreement as set forth by Johness, he could not recover. But even if we admit the existence of the agreement set up by Johness, how could that agreement affect the Sheriff who was not a party to it, and who knew nothing of it? The Sheriff alone could release Barnes or Johness.

Nor does it make any difference that at the time Johness paid White, that the Sheriff had made no demand upon him . Of course, if Saxon had not assumed to pay the costs, then Johness was liable for them at all times; if Saxon had assumed to pay the costs, it was Johness' duty to have enquired if he had paid them, before paying White, because he cannot be heard to say that he did not know that costs had been incurred in the Barnes suit.

1110 The third defense is that he has paid Saxon all he owes him, and that Saxon is indebted to him for money loaned. It is immaterial how much money defendant paid Saxon or loaned him; if Saxon has not paid the Sheriff, Johness is still liable; the Sheriff certainly cannot be made to suffer for a failure of Saxon to perform his suty towards Johness.

It is therefore ordered, adjudged, and decreed that the judgment herein rendered be reversed and avoided; and it is now ordered that the rule herein taken by the Sheriff on November 24th, 1919 be made absolute and accordingly that Edmund O. Barnes be condemned to pay Louis Knop the sum of $38.07 and all the costs of this rule;

It is further ordered that Allen H. Johness be condemned to pay Louis Knop the sum of One Hundred and ninety-seven 97/100 Dollars and all the costs of this rule.

October 18th, 1920.